FILED

OCT 17 2024

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

**SARAH BUNTURA, Plaintiff**
v.
**FORD MOTOR COMPANY**
and
**S2 VERIFY LLC**

**COMPLAINT**

1:24 CV 01811

**JUDGE CALABRESE**
**MAG JUDGE ARMSTRONG**

## SUMMARY OF CLAIMS

**Fair Credit Reporting Act (FCRA) Violations – Ford Motor Company and S2 VERIFY LLC:**
Ford's failure to provide pre-adverse and adverse action notices under 15 U.S.C. § 1681b(b)(3) and § 1681m(a) caused Plaintiff to rely on the job offer, leading her to inform her current employer of her job acceptance with Ford. This resulted in her immediate termination, with all income ending. Plaintiff had built a strong reputation within the business community across multiple counties, and Ford's violations cost her both jobs. S2 VERIFY LLC further harmed Plaintiff by refusing to provide the background check application, denying her the chance to address any errors.

**National Labor Relations Act (NLRA) Violations – Ford Motor Company:**
The NLRA, under 29 U.S.C. § 157, protects both employees and applicants engaged in concerted activities for mutual aid or protection. Plaintiff's communication with the union president raised concerns about Ford's lack of communication, which affected both herself and other applicants, constituting protected concerted activity. Prior to the union's involvement, Ford blocked Plaintiff's attempts to follow up on her job status and failed to provide transparency about her background check, suggesting discriminatory treatment based on the results.

After the union began investigating these concerns, Ford retaliated by retracting the job offer, citing alleged dishonesty on Plaintiff's application. Ford also refused to consider other pending job applications that had been in the system for months, rejecting them only after the investigation began. These retaliatory actions violated 29 U.S.C. § 158(a)(1), which prohibits employers from interfering with applicants' NLRA-protected rights.

**Employment Discrimination (Title VII - Reverse Discrimination) – Ford Motor Company:**
Plaintiff asserts that Ford's actions also constitute reverse discrimination under 42 U.S.C. § 2000e-2(a) of Title VII of the Civil Rights Act of 1964. Plaintiff is aware, through discussions with other employees, that Ford employs a significant number of minority workers with backgrounds that include criminal records. Despite this, Plaintiff's background check was used as a basis to retract the job offer, while similar background issues did not prevent minority applicants from being hired. Ford's preferential treatment toward minority applicants, while rejecting Plaintiff, demonstrates reverse discrimination in violation of Title VII.

## INTRODUCTION

This case is not just about one individual—it's about exposing how easily companies like Ford Motor Company and S2 VERIFY LLC can violate federal protections, revealing serious gaps in laws designed to protect consumers and workers. Ford's actions demonstrate how corporations can willfully disregard the Fair Credit Reporting Act (FCRA) and the National Labor Relations Act (NLRA) without facing meaningful consequences. This failure of accountability impacts more than just Plaintiff; it highlights a systemic issue requiring immediate federal attention.

Plaintiff has made efforts to bring these issues to the attention of lawmakers, offering real solutions to address the weak enforcement of these laws. Plaintiff shared her experience with legislative offices to highlight how vulnerable individuals are when corporations abuse the very laws meant to protect them. Congress must act to strengthen these protections, or more people will continue to be harmed by the same types of violations that Plaintiff has experienced.

This case is about more than one job or one person—it is about holding powerful companies accountable and pushing for stronger, more effective legal protections. By bringing these violations to federal court, Plaintiff hopes this case will serve as a call to action for lawmakers to address the urgent need for reform. The violations here expose the dangerous ease with which corporations can sidestep federal laws. These protections must work as intended: to defend the rights of individuals, not protect corporate interests.

## III. JURISDICTION AND VENUE

This complaint arises from the same facts and claims as the prior case, **Case No. 1:24-cv-1313**, which was dismissed without prejudice for procedural issues. Plaintiff has corrected the deficiencies identified in the court's dismissal and is refiling the complaint with the same defendants.

This Court has subject matter jurisdiction under **28 U.S.C. § 1331** because this action involves federal questions arising under the **Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq.**, and the **National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq.**

The Court also has diversity jurisdiction under **28 U.S.C. § 1332**, as the parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff, Sarah Buntura, is a resident of Ohio. Ford Motor Company is incorporated and has its principal place of business in Michigan, and S2 VERIFY LLC is a Georgia corporation with its principal place of business in Georgia. None of the members of S2 VERIFY LLC are citizens of Ohio, ensuring complete diversity.

Venue is proper under **28 U.S.C. § 1391(b)(2)** because a substantial part of the events giving rise to the claims occurred in this district.

## IV. PARTIES

**Plaintiff:**
Sarah Buntura is an individual and resident of Medina County, Ohio, with an address at 4390 Southwick Blvd, Brunswick, Ohio, 44212. She has been directly affected by the actions of the Defendants as outlined in this complaint.

**Defendants:**
**Ford Motor Company** is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located at One American Road, Dearborn, Michigan. Ford is engaged in the business of manufacturing and selling motor vehicles and is subject to the jurisdiction of this Court.

**S2 VERIFY LLC** is a Domestic Limited Liability Company formed under the laws of the State of Georgia, with its principal office located at 3600 Mansell Road, Suite 275, Alpharetta, GA 30022, USA. The registered agent for S2 VERIFY LLC is Bill Whitford, whose address is 8680 Merion Drive, Duluth, GA 30097. S2 VERIFY LLC provides background check services and is subject to the jurisdiction of this Court.

## II. FACTS

On March 13, 2024, Plaintiff applied for a position at Ford Motor Company's Cleveland Engine Plant. On March 20, 2024, Plaintiff received and accepted an offer letter from Kristen Onesko, a representative of Ford.

On March 27, 2024, Plaintiff sent an email to Ford, seeking updates on the status of her employment.

Plaintiff's background check, conducted by S2 VERIFY LLC, was completed and sent to Ford by the end of March 2024. On April 4, 2024, Plaintiff emailed S2 VERIFY to confirm that the background check had been sent to Ford.

Between April 9, 2024, and May 6, 2024, Plaintiff sent multiple emails to Kristen Onesko, inquiring about the status of her employment and confirming that the background check had been sent. Despite repeated requests for updates and phone calls, Plaintiff received no response. On May 6, 2024, Ford blocked Plaintiff's emails, cutting off further communication.

On May 13, 2024, Plaintiff emailed her boss to inform him that she had accepted an offer from Ford but wanted to continue working until she received more information about her start date and other details. Plaintiff was terminated on the spot, and all income ended immediately.

On May 28, 2024, Plaintiff emailed S2 VERIFY LLC, requesting that they resend her background check to Ford or provide confirmation that Ford had received it. S2 VERIFY responded, stating that the background check had already been sent and directed Plaintiff to contact Ford directly for further updates.

On June 10, 2024, Plaintiff reached out to Union President Wilma Thomas, requesting a phone call to discuss the issues she had encountered with Ford's lack of communication. On June 17, 2024, Ms. Thomas called Plaintiff, and on June 18, 2024, she confirmed that Plaintiff's concerns were under investigation by the union.

On June 25, 2024, at 1:27 PM, Union President Thomas requested that Plaintiff forward all her emails to Ford's labor relations department, including proof that her emails had been blocked. Later that day, at 3:21 PM, Plaintiff was contacted by Kristen Onesko, who retracted the job offer, citing alleged dishonesty related to a 2019 OVI charge. Ms. Onesko refused to provide a written explanation for the retraction. Plaintiff requested reconsideration, noting the emails she had previously sent seeking updates, but Ms. Onesko falsely claimed she had never received or blocked any of Plaintiff's emails. Plaintiff has evidence to refute this claim.

On June 26, 2024, Plaintiff emailed S2 VERIFY LLC, stating that Ford had claimed there was incorrect information on her background check application. Plaintiff requested a copy of the application used for the background check, which S2 VERIFY LLC refused to provide. Plaintiff then requested a blank application form to verify the questions that were asked, but S2 VERIFY again refused, citing Ford's instruction to direct all inquiries to them.

Plaintiff contacted Ford's EthicsPoint hotline, a resource for reporting concerns about harassment and discrimination, but received no response. She also sent an email to Kristen Onesko's supervisor, which was similarly ignored.

After repeated efforts to resolve the situation, including reaching out directly to Ford's CEO, Jim Farley, on multiple social media platforms, Plaintiff's attempts were ignored, despite the seriousness of the situation. As a result, Plaintiff retained legal counsel, who sent a formal complaint to Ford's Director of Human Resources. This prompted a response from Ford's legal team, but rather than address the situation in good faith, Ford continued to treat Plaintiff dismissively, attempting to capitalize on the fact that, at that time, she did not have full legal representation.

Although Plaintiff's attorney was involved solely to submit the complaint, Ford's legal team continued to mishandle the matter. They even tried to retroactively send the proper notices, but it came from S2 VERIFY after the fact and not from Ford itself. Regardless, these efforts were meaningless, as they attempted to fix the issue retroactively while refusing to provide any real assistance or resolution. These actions further underscored Ford's complete disregard for Plaintiff's rights and for the legal requirements under the Fair Credit Reporting Act.

What's more disturbing is that this case highlights a larger issue—Ford's behavior shows that big corporations do not take these violations seriously. Despite numerous class action lawsuits that have forced employers to pay substantial fines for FCRA violations, these penalties have not been enough to stop corporations from continuing to break the law. This isn't a game, and the impact on people's lives is real and devastating. I have experienced firsthand the consequences of Ford's actions, and the emotional and financial harm they have caused me is significant. This is exactly why this case needs to grab the attention of lawmakers—because if companies like Ford can so easily disregard the law without facing real consequences, it will continue to happen. I'm angry, and I want this to stop with me.

Ford's legal team acted as though my concerns were trivial, suggesting that I was confused about the reasons for the job retraction—when, in fact, I had clearly communicated the reasons to them multiple times. This dismissive approach was deeply disturbing and offensive. The true issue was never my understanding of why the job offer was rescinded; it was Ford's blatant disregard for legal procedures and my rights as an individual. Enough is enough.

## V. CLAIMS FOR RELIEF

**1. Fair Credit Reporting Act (FCRA) Violations - Ford and S2 VERIFY LLC**
The Fair Credit Reporting Act (FCRA) is a federal law that governs how consumer reports, including background checks, are used in employment decisions to ensure fairness and transparency. Under 15 U.S.C. § 1681g, I had the right to request and obtain all information used in my background check process, which includes the application that Ford claimed contained inaccurate information. S2 VERIFY LLC refused to provide me with a copy of my background check application or a blank application, preventing me from verifying the accuracy of what Ford used to retract my job offer.

Ford was required by 15 U.S.C. § 1681b(b)(3) to provide me with a copy of the background check report and a summary of my rights before taking adverse action, such as revoking the job offer. Ford failed to do so. Even though I eventually received the background check from S2 VERIFY LLC after the job offer had been retracted, Ford had the responsibility to provide this information before taking action. Additionally, Ford did not provide a proper adverse action notice under 15 U.S.C. § 1681m(a), leaving me without the opportunity to dispute what they claimed was a misrepresentation on my application.

Under 15 U.S.C. § 1681g, I had the right to request and obtain a copy of all the information used in my background check process. S2 VERIFY LLC refused to provide me with a copy of the application I filled out for the background check or a blank version of the application. This refusal obstructed my ability to verify the details Ford claimed were the basis for retracting my job offer, and it denied me the opportunity to address any errors Ford attributed to my responses on the application.

My background check was sent to Ford at the end of March by S2 VERIFY LLC. After reviewing it, Ford took adverse action by rescinding the job offer, yet failed to comply with the FCRA's requirements. Despite my multiple emails and voicemails to the Ford representative who sent the offer letter, my requests for an update on the hiring process were ignored. Ford eventually blocked my attempts to follow up, violating 15 U.S.C. § 1681b(b)(3) by not providing the required pre-adverse action notice and violating 15 U.S.C. § 1681m(a) by not issuing a proper adverse action notice. Ford's failure to follow these legally required steps prevented me from disputing or addressing any issues they claimed were on my background check before making their decision.

**2. Violation of the National Labor Relations Act (NLRA)**
Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

The National Labor Relations Act (NLRA), codified at 29 U.S.C. §§ 151-169, provides protections for employees and applicants engaging in "concerted activity" for the purpose of mutual aid or protection. The NLRA's protection extends not only to current employees but also to applicants who are engaged in activities to improve labor conditions, including raising concerns about employer policies that affect others.

Plaintiff's communications with Union President Wilma Thomas were not solely about her personal employment concerns but also raised broader issues regarding the lack of communication and transparency in Ford's labor relations department, which affected other applicants and employees. These concerns were shared on behalf of both Plaintiff and others experiencing similar issues, making the communication a protected concerted activity under the NLRA.

Under 29 U.S.C. § 157, employees and applicants have the right to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. Plaintiff's effort to raise these concerns with the union was intended to benefit others within the organization, making it a clear example of concerted activity protected by the NLRA.

Ford's retaliatory actions began shortly after the union investigation into Plaintiff's concerns was initiated:

- Ignoring and blocking Plaintiff's communications prior to the union's involvement, demonstrating Ford's attempt to disregard her concerns before they were elevated.
- Retracting Plaintiff's job offer on June 25, 2024, shortly after the union's investigation began, falsely citing alleged dishonesty regarding Plaintiff's background check. This action was taken without proper due process or a chance for Plaintiff to contest the alleged misrepresentation.
- Refusing to consider Plaintiff's applications for other positions that had been pending for months. These applications were in Ford's system before the union investigation, but within five weeks of the investigation, all were summarily rejected. This shows clear retaliation in response to Plaintiff's protected concerted activity.

Ford's actions directly violated 29 U.S.C. § 158(a)(1), which prohibits employers from interfering with, restraining, or coercing employees or applicants in the exercise of their rights under the NLRA. By retaliating against Plaintiff for raising concerns and engaging in concerted activity, Ford breached its obligations under the Act.

## Promissory Estoppel – Ford Motor Company

Ford extended a job offer, which Plaintiff reasonably relied upon by notifying her employer, resulting in her immediate termination. While Ford may argue that the offer was contingent upon passing a background check, **15 U.S.C. § 1681b(b)(3)** required Ford to provide a pre-adverse action notice, including a copy of the background report and a summary of rights, before taking any adverse action. Ford also failed to provide the required adverse action notice under **15 U.S.C. § 1681m(a)**.

By failing to meet these obligations, Ford gave Plaintiff every reason to believe that the position was secure. The sudden retraction of the job offer without proper notice caused significant financial and professional harm. Under the doctrine of **promissory estoppel**, Ford should be held liable for these damages because Plaintiff reasonably relied on the offer to her detriment.

## Discrimination (Title VII Violations)

Ford intentionally discriminated against Plaintiff by using her background as a pretext to retract the job offer and cut off all communication Despite Plaintiff's persistent emails, calls, and even attempts by employees on the inside to get Ford to respond, Ford deliberately ignored every effort Reverse discrimination also applies—had Plaintiff been a minority or male, her follow-ups would not have been disregarded, and her candidacy would not have been dismissed so abruptly Ford's conduct violated **42 U.S.C. § 2000e-2(a)**, which prohibits discrimination on the basis of race, color, sex, or national origin in hiring and employment practices

## IV. PRAYER FOR RELIEF

Plaintiff demands a trial by jury on all issues so triable, to expose how Ford and S2 VERIFY willfully disregarded FCRA enforcement and demonstrate to the jury and lawmakers how easily employers can abuse these protections.

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1. A judgment in favor of Plaintiff against Defendants for actual damages sustained due to violations of the Fair Credit Reporting Act, National Labor Relations Act, and Title VII of the Civil Rights Act of 1964.
2. Compensatory damages for lost wages totaling $40,000, reflecting the income lost from her previous employment and the anticipated earnings from the retracted Ford job offer.
3. Compensatory damages related to the Ford job offer, totaling $35,000, which includes an estimated value of lost benefits, overtime, and profit-sharing potential based on projected earnings for the position.
4. Damages for credit score drop and savings depletion totaling $10,000, reflecting the financial hardships faced due to lost income.
5. Additional compensatory damages for emotional distress and reputational harm totaling $15,000.
6. A declaration that Defendants' actions were unlawful and violated federal laws.
7. An order compelling Defendants to adhere to federal laws concerning employment practices and to provide all necessary notices as required by law.
8. Any other relief that the Court deems just and proper.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court grant the relief sought in this Amended Complaint. Plaintiff believes that the violations of federal law outlined above warrant judicial intervention to ensure accountability and protect her rights.

Respectfully submitted,

*[signature]*

**SARAH BUNTURA**
Phone: (216) 352-8569
Email: sarahbuntura@gmail.com

4390 Southwick Blvd
Brunswick, Ohio 44212
10/17/2024